No. 23-6218 *and* No. 24-6043

IN THE

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

SUSAN PARISI,

*Plaintiff-Appellee*,

v.

OKLAHOMA WINDOWS AND
DOORS, LLC d/b/a RENEWAL BY
ANDERSEN OF OKLAHOMA
and GREENSKY, LLC,

*Defendant-Appellants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
The Honorable David L. Russell
D.C. Case No. 5:23-CV-00115-R

**CONSOLIDATED REPLY BRIEF OF DEFENDANTS-APPELLANTS**

Diane J. Zelmer, Esq.
BERENSON LLP
4495 Military Trail, Suite 203
Jupiter, Florida 33458
(561) 429-4496
Email:  djz@berensonllp.com

Sheila D. Sayne, Esq.
Sayne Law PLLC
P.O. Box 33309
Tulsa, Oklahoma 74153-3309
(918) 740-3013
Email:  sheila.sayne@outlook.com
*Attorneys for Appellant Oklahoma
Windows and Doors, LLC*

Barry Goheen, Esq.
PIERSON FERDINAND
100 Mount Param Ridge
Atlanta, GA 30327
404-703-3093
Email: barry.goheen@pierferd.com
Derrick T. DeWitt
Kyle R. Prince
DeWITT PARUOLO & MEEK
P.O. Box 138800
Oklahoma City, Oklahoma 73113
(405) 705-3600
Email:  dewitt@46legal.com
Email:  kprince@46legal.com
*Attorneys for Appellant GreenSky, LLC*

ORAL ARGUMENT IS REQUESTED

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................iv

SUMMARY OF THE ARGUMENT ......................................................1

ARGUMENT .........................................................................................3

I.    THE DISTRICT COURT ERRED BY DENYING RBA'S
MOTION TO COMPEL ARBITRATION ..................................3

      A.    IT IS WELL-SETTLED LAW THAT CHALLENGES TO
THE CONTRACT AS A WHOLE MUST BE DELEGATED
TO THE ARBITRATOR ....................................................3

            1.    Parisi is Bound by the *Prima Paint* Severability
Doctrine Because She Challenges the Formation of the
Entire Agreement, not the Arbitration or Delegation
Clause ........................................................................4

            2.    Parisi Erroneously Asserts that *Cox Enterprises* Is No
Longer Good Law ......................................................7

            3.    Parisi's Argument that "Fraud in the Execution"
Allows her to Circumvent the Arbitration Clause Fails ............8

      B.    THE DISTRICT COURT ERRED BY HOLDING THAT
THE WINDOWS CONTRACT LACKED MUTUAL
ASSENT ..........................................................................11

            1.    Parisi's Argument Alleging Fraud in the Execution is
Barred ......................................................................11

                  a.    Parisi Failed to Raise Fraud in the Execution
Before the Trial Court......................................11

                  b.    Parisi Failed to Raise Fraud in the Execution in
Her Pleadings..................................................12

            2.    Parisi's Assertion that She Had No Reasonable Notice
is Misplaced .............................................................13

            3.    The Parties Agreed on the Essential Terms of the
Windows Contract.....................................................16

i

4.    Parisi Cannot Establish a Claim for Fraud in the
Execution ................................................................................17

5.    Parisi Cannot Demonstrate that the Windows Contract
is Void Due to a Violation of Federal and State
Electronic Signature Laws .......................................................19

6.    The Windows Contract and Arbitration Provision are
Supported by Adequate Consideration ....................................21

II.    THE DISTRICT COURT ERRED BY DENYING GREENSKY'S
MOTION TO COMPEL ARBITRATION ..................................................22

A.    PARISI'S OWN ARGUMENTS AND THE DISTRICT
COURT'S OWN LANGUAGE DEMONSTRATE THAT
PARISI CHALLENGES ENFORCEABILITY AND
VALIDITY, NOT FORMATION, OF THE LOAN
AGREEMENT, AND THOSE ISSUES HAVE BEEN
DELEGATED TO THE ARBITRATOR ...........................................23

1.    Parisi's Challenge Necessarily Is One of Validity/
Enforceability and Not Formation Because, as Is
Undisputed, Her Loan Agreement Was Formed with
the Use of the Shopping Pass or Loan .....................................24

a.    The District Court's Order Clearly Addressed
Whether the Use of the Shopping Pass or Loan
Was Authorized, Not Whether the Loan
Agreement Had Been Formed in the First
Instance .........................................................................24

b.    Courts Routinely Hold That Use of a Product,
Such as a Credit Card, Constitutes Acceptance
and, Thus, Formation of a Contract ...............................27

2.    The Delegation Clause Mandates That All Other
Questions Must Be Resolved by to the Arbitrator ...................28

B.    EVEN IF THE COURT CONCLUDES THAT PARISI
CHALLENGES FORMATION, SHE ASSENTED TO THE
ARBITRATION AGREEMENT BECAUSE SHE
RECEIVED REASONABLE NOTICE OF THE LOAN
AGREEMENT PRIOR TO USE OF THE SHOPPING PASS .........32

1.      Parisi Received the Loan Agreement by E-Mail, and
        Her "Spam" Excuse Holds No Weight ...................................... 33

2.      Parisi Has Not Rebutted the Presumption That She
        Received the Documents by U.S. Mail That Were
        Mailed to Her Nearly a Week Before Use of the
        Shopping Pass ........................................................................... 34

        a.      The Mailbox Rule Applies and Parisi's Non-
                Specific Testimony Does Not Rebut
                Presumption of Receipt .................................................... 34

        b.      Parisi Is Presumed to Have Received the Loan
                Agreement Prior to the Use of the Shopping Pass ......... 35

III.    AT A MINIMUM, FACT QUESTIONS EXIST, WARRANTING
        A FORMATION TRIAL. ............................................................... 37

CONCLUSION ....................................................................................... 37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*A-Plus Janitorial & Carpet Cleaning v. Employers' Workers' Comp. Ass'n*,
1997 OK 37, 936 P.2d 916 (1997) .......................................................13

*Athon v. Direct Merchants Bank*,
2007 WL 1100477 (M.D. Ga. Apr. 11, 2007).....................................26

*Audish v. Am. Express Co.*,
2023 WL 2366888 (S.D.N.Y. Mar. 6, 2023) .......................................27

*Baldwin Co. Welcome Center v. Brown*,
466 U.S. 147 (1984) ......................................................................35, 36

*Belyea v. GreenSky, Inc.*,
2021 WL 1338552 (N.D. Cal. Apr. 9, 2021) .......................................24

*BigBen 1613, LLC v. Belcaro Group, Inc.*,
2018 WL 4257321 (D. Colo. Sept. 6, 2018) .......................................30

*Brayman v. KeyPoint Gov't Solutions, Inc.*,
83 F.4th 823 (10th Cir. 2023)..............................................................28

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) .......................................... 4, 9, 10, 11, 19, 29, 30

*Coinbase v. Suski*,
114 S. Ct. 1186 (2024) ......................................................6, 7, 8, 29, 31

*Cornell v. Desert Fin. Credit Union*,
2021 WL 4710173 (D. Ariz. Oct. 8, 2021) .........................................15

*Del Turco v. Speedwell Design*,
623 F. Supp. 2d 319 (E.D.N.Y. 2009)..................................................18

*D-J Eng'g Inc. v. UBS Fin. Serv., Inc.*,
2012 WL 171342 (D. Kan. Jan. 20, 2012) ..........................................31

*Droney v. Vivint Solar*,
2018 WL 6191887 (D.N.J. Nov. 28, 2018)...............................12, 19, 37

*El-Hage v. Comerica Bank*,
2020 WL 7389041 (E.D. Mich. Dec. 16, 2020)...................................27

iv

*Fancher v. Westwind, Ltd.*,
  2018 WL 11411336 (W.D. Okla. Aug. 8, 2018)..................................................30

*Fedor v. United Healthcare, Inc.*,
  976 F.3d 1100 (10th Cir. 2020) ....................................................................29, 30

*Ferguson v. Greensky, Inc.*,
  2023 WL 4462126 (2023) ................................................................................20

*Gibson v. C.I.R.*,
  264 F. App'x 760 (10th Cir. 2008)....................................................................34

*Goldgroup Resources, Inc. v. DynaResource de Mexico, S.A. de C.V.*,
  994 F.3d 1181 (10th Cir. 2021) ........................................................................29

*Hales v. Casey's Marketing Co.*,
  886 F.3d 730 (8th Cir. 2018) ....................................................................... 35-36

*Hancock v. American Tel. and Tel. Co., Inc.*,
  701 F.3d 1248 (10th Cir. 2012) ........................................................................14

*Harkrider v. Posey*,
  2000 OK 94, 24 P.3d 821 (2000) ....................................................................5, 9

*Heiges v. JP Morgan Chase Bank, N.A.*,
  521 F. Supp. 2d 641 (N.D. Ohio 2007) ............................................................28

*In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Lit.*,
  835 F.3d 1195 (10th Cir. 2016) ...............................................................7, 30, 31

*Iron Workers' Local No. 25 Pension Fund v.*
*Allied Fence & Sec. Sys., Inc.*,
  922 F. Supp. 1250 (E.D. Mich. 1996) ..............................................................18

*Jarrett v. U.S. Sprint Comm. Co.*,
  22 F.3d 256 (10th Cir. 1994) ...........................................................................35

*Jones v. NetSpend Card Co.*,
  2018 WL 2427376 (W.D. Tex. May 30, 2018)..................................................26

*Kilkenny as Trustees of Constr. Council Loc. 175 Pension Fund v.*
*Gold Coast Pavers, Inc.*,
  2021 WL 4340827 (E.D.N.Y. Sept. 22, 2021)..............................................17. 18

*Krutchik v. Chase Bank USA, N.A.*,
  531 F. Supp. 2d 1359 (S.D. Fla. 2008)..............................................................26

*Kulig v. Midland Funding, LLC*,
   2013 WL 6017444 (S.D.N.Y. Nov. 13, 2013) ................................................ 27-28

*Lindon City v. Engineers Const. Co.*,
   636 P.2d 1070 (Utah 1981) ....................................................................17

*Local Union 1253, IBEW, AFL-CIO v. S/L Construction, Inc.*,
   217 F. Supp. 2d 125 (D. Me. 2002)................................................ 18-19

*Malone v. Hoogland Foods, LLC*,
   2020 WL 6158201 (W.D. Wis. Oct. 21, 2020) ....................................21

*Marquez v. Fantastic Foods, Inc.*,
   2006 WL 8444224 (D.N.M. May 25, 2006) ........................................35

*Monexco, LLC v. Corp. Comm'n*,
   2023 OK CIV APP 34, 538 P.3d 557 (2022) ......................................16

*Myers v. Credit One Bank*,
   2017 WL 3727339 (E.D. Pa. Aug. 30, 2017)......................................35

*Najera v. David Stanley Chevrolet, Inc.*,
   2017 OK CIV APP 62, 406 P.3d 592 (2017) ......................................14

*Nat'l Fed'n of the Blind v. The Container Store, Inc.*,
   904 F.3d 70 (1st Cir. 2018) ................................................................15

*Norasteh v. U.S. Dept. of Educ.*,
   2011 WL 2493968 (S.D.N.Y. June 22, 2011)......................................36

*Norcia v. Samsung Telecomms Am., LLC*,
   845 F.3d 1279 (9th Cir. 2017).............................................................32

*Oak Tree Partners, LLC v. Williams*,
   2020 OK CIV APP 5, 458 P.3d 626 (2020) ..........................................5

*Payan v. Aramark Mgt. Serv. L.P.*,
   495 F.3d 1119 (9th Cir. 2007).............................................................36

*Pfeifle v. Chemoil Corp.*,
   373 F. App'x 720 (5th Cir. 2003)........................................................26

*Prima Paint Corp. v. Flood & Conklin Mfg.*,
   388 U.S. 395 (1967) ......................................................................3, 4, 9

*Rademacher v.*
   *Colorado Ass'n of Soil Conservation Districts Med. Ben. Plan*,
   11 F.3d 1567 (10th Cir. 1993) ..............................................................12

*Ranginwala v. Citibank*,
   2020 WL 6817508 (D.N.J. Nov. 19, 2020) .........................................27

*Rent-A-Center v. Jackson*,
   561 U.S. 63 (2010) ...............................................................................29

*Rosenthal v. Great W. Fin. Sec. Corp.*,
   14 Cal. 4th 394 (1996)...................................................................10, 11

*Sac & Fox Nation v. Hanson*,
   47 F.3d 1061 (10th Cir. 1995) .............................................................11

*Shaeffer v. Kessler*,
   2023 WL 1155587 (S.D.N.Y. Mar. 20, 2013) ....................................18

*Shafer v. Citibank, N.A.*,
   2022 WL 22842397 (N.D. Tex. May 17, 2022)....................................27

*Sheppard v. Bourgeois*,
   2001 WL 37125392 (D.N.M. Aug. 31, 2001).......................................19

*Sorrentino v. IRS*,
   383 F.3d 1187 (10th Cir. 2004) ...........................................................34

*SOTI, Inc. v. Impartner, Inc.*,
   2018 WL 2745246 (D. Utah June 7, 2018) .........................................31

*Spahr v. Secco*,
   330 F.3d 1266 (10th Cir. 2003) ...................................................6, 7, 31

*Stock v. Wells Fargo*,
   2023 WL 5505839 (C.D. Cal. July 13, 2023) ......................................33

*Umana v. Citigroup, Inc.*,
   2018 WL 11473760 (S.D. Fla. Nov. 5, 2018)......................................27

*Walker v. BuildDirect.Com Techcs, Inc.*,
   349 P.3d 549 (Okla. 2015) ...................................................................14

*Williams v. TAMKO Building Products, Inc.*,
   451 P.3d 146 (2019) ......................................................................14, 15

*Williams-Jackson v.*
  *Innovative Senior Care Home Health of Edmond, LLC*,
  727 F. App'x 965 (10th Cir. 2018)........................................................22

*Wright v. Greensky, Inc.*,
  2021 WL 2414170 (S.D. Fla. June 14, 2021) .................................24, 34

**Statutes & Other Authorities:**

Fed. R. Civ. P. 6(a)(6)..............................................................................36

Fed. R. Civ. P. 6(e)............................................................................35, 36

Okla. Stat. Ann. tit. 12, § 2009 ...............................................................13

Restatement (Second) of Contracts § 163 (1981)............................ 12, 18

## SUMMARY OF THE ARGUMENT

Parisi erroneously argues that because she disputed *formation* of the Window Contract and the Loan Agreement, she *automatically* disputed the formation of the arbitration and delegation clauses within those contracts. Parisi's argument is contrary to well-settled Supreme Court precedent in *Prima Paint* and *Buckeye*, both of which uphold the severability principle and which require the Court to delegate any disputes concerning the ***entire*** agreements to the arbitrator. To hold otherwise would ignore binding precedent from the Supreme Court and this Court, which expressly do not distinguish between void or voidable contracts, and which acknowledge the severability doctrine that requires disputes concerning the entire contract be sent to the arbitrator.

Moreover, Parisi argues, for the first time in this appeal, that the Windows Contract is void due to alleged "fraud in the execution" and that she had "no reasonable notice" of the terms. Parisi never raised these issues in her pleadings[1] or in opposition to RBA's motion to compel, and as such, these arguments are barred.

Moreover, Parisi goes to great lengths to argue that the Windows Contract was never formed because of lack of mutual assent on the terms and/or due to fraud

---

[1] It should be noted that Parisi's Amended Petition only alleges RBA's failure to comply with certain credit disclosures and seeks damages – Parisi seeks no declaratory relief and makes no allegation of ***any*** type of fraud that should result in a determination the Windows Contract is either void or voidable.

1

in the execution, but she cannot overcome one critical factor – Parisi must demonstrate excusable neglect for failure to read the terms of the Windows Contract before signing. The evidence simply does not demonstrate any excusable neglect; rather, Parisi admits that she voluntarily signed a blank iPad screen – not once, but twelve times. At no time does she demonstrate any affirmative act to comply with her duty to read before signing. Finally, any argument that RBA's failure to comply with Federal or State electronic laws does not provide support for Parisi to allege lack of formation of the Windows Contract, especially where, as here, she consented and placed her signature on the iPad and received a physical copy of the contract via email.

Parisi's arguments regarding GreenSky fare no better. The district court (and Parisi) consistently used terms and phrases such as "unenforceable," "unauthorized transaction," and "illusory" to discuss the Loan Agreement and the transaction that Parisi herself claimed was not "authorized" upon the Loan Agreement being formed. Her arguments are classic "enforceability" arguments that the GreenSky Arbitration Agreement's delegation provision – which Parisi did not challenge in the district court – directs to the arbitrator for resolution.

Yet, even if the Court could overlook the district court's and Parisi's own language and hold that her challenge is one of formation, Parisi clearly received the terms of the GreenSky Arbitration Agreement before the Shopping Pass was used,

2

thereby forming the Loan Agreement containing that arbitration agreement. Parisi's "email went to spam" excuse should be rejected, consistent with the rulings of other courts (which Parisi essentially has conceded); alternatively, she also received the Loan Agreement by U.S. Mail and is presumed to received it prior to the first use of the Shopping Pass.

At a bare minimum, fact questions on these issues would warrant a formation trial, though the Court need not reach that issue because the facts clearly establish that Parisi's challenges to the authorization of a transaction and/or formation of the contracts, are issues that have been delegated to the arbitrator.

## ARGUMENT

### I. THE DISTRICT COURT ERRED BY DENYING RBA's MOTION TO COMPEL ARBITRATION.

#### A. IT IS WELL-SETTLED LAW THAT CHALLENGES TO THE CONTRACT AS A WHOLE MUST BE DELEGATED TO THE ARBITRATOR.

In *Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395 (1967), the Supreme Court considered the very matter at issue in this case: "whether a claim of fraud in the inducement **of the entire contract** is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators."  *Id*. at 402 (e.s.).  Only where "the claim is fraud in the inducement **_of the arbitration clause itself_**" may the court proceed to adjudicate it.  *Id*. at 403 (e.s.).  However, the plain language of the FAA "does not permit the federal court to consider claims of fraud in the inducement

of the contract generally." *Id*. at 404.  The Court rejected the view that the question

of "severability" was one of state law.  *Id*. at 400, 402-403.  In 2006, the Supreme

Court reinforced this holding in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S.

440, 446 (2006).  Additionally, the Court expressly rejected a party's reliance on

state law to distinguish between void and voidable contracts as a strategy to avoid

arbitration, recognizing that "the *Prima Paint* rule permits a court to enforce an

arbitration in a contract that the arbitrator later finds to be void."  *Id*. at 448.  The

Court held that "regardless of whether the challenge is brought in federal or state

court, a challenge to the validity of the contract as a whole, and not specifically to

the arbitration clause, must go to the arbitrator."  *Id*. at 449.

Parisi erroneously attempts to have this Court create a distinction that has

already been rejected by well settled Supreme Court holdings.  Whether the contract

is void or voidable is irrelevant – any such challenge is for the arbitrator to decide.

### 1. Parisi is Bound by the *Prima Paint* Severability Doctrine Because She Challenges the Formation of the Entire Agreement, not the Arbitration or Delegation Clause.

The bottom line is that Parisi never raised any separate challenge to the

arbitration agreement in the district court.[2]  Parisi's argument below only challenged

---

[2] In her Brief, Parisi relies solely on a factual statement raised in her opposition motion (App. V3-596) as well as her argument for failure to comply with federal and Oklahoma Electronic Laws (which disputes the entire agreement) (Parisi Br.at 25-26).

the Windows Contract *as a whole*, and it is well settled law that any such dispute must be resolved by the arbitrator. *See supra*, Part I.A.

Parisi alleges she "never viewed, let alone agreed to essential terms." (App. V3-610.) Indeed, Parisi argued that there was no mutual assent because the loan "did not represent the terms of an actual offer being made to Parisi *for her purchase of windows*." (App. V3-611) (e.s.).[3] Parisi argued that there was "no meeting of the minds" as the parties "were not in agreement on the most essential terms **_because_** Parisi was never even approved for the Zero Interest Loan." (App. V3-611.) (e.s.) Similarly, in the Response Brief, Parisi argues that "she never formed the arbitration agreement **_because_** the contract to purchase windows from RBA lacked . . . mutual assent." (Parisi Br. at 24) (e.s.). Therefore, there is no doubt that the challenge

---

[3] Based on this argument, the district court ruled that there was no mutual assent because the loan terms were different than what she agreed to. This argument is indicative of a fraudulent inducement claim. *Oak Tree Partners, LLC v. Williams*, 2020 OK CIV APP 5, ¶ 36, 458 P.3d 626, 637 (2020)(defined as "a misrepresentation as to the terms, quality or other aspects of a contractual relation, venture or other transaction that leads a person to agree to enter into the transaction with a false impression or understanding of the risk, duties or obligation she has undertaken). "A contract voidable for fraud in the inducement creates a valid contractual relationship, which subsists in contemplation of law until the parties are relieved of their obligation by a decree of rescission." *Harkrider v. Posey*, 2000 OK 94, ¶ 11, 24 P.3d 821, 827 (2000). Here, as in *Posey*, the alleged misrepresentation as to the interest rate directly affects the risk, obligations and duties that Parisi was undertaking. Parisi admittedly agreed to purchase the windows, albeit at a different interest rate that she alleges was offered to her.

asserted by Parisi is made to the contract as a whole, not to the arbitration clause itself.

Although Parisi asserted in the district court that she "did not *know* she was agreeing to a contract that included an arbitration clause or a waiver of class action" (App. V3-610), that factual statement, in and of itself, does not raise a challenge to the arbitration agreement or delegation clause.  Parisi failed to assert in opposition to RBA's motion to compel arbitration any argument separately challenging the formation of the arbitration or delegation clause. (App. V3-589-621.)[4]  Contrary to Parisi's assertions, *Coinbase v. Suski*, 114 S. Ct. 1186 (2024), provides no support for her position.  (Parisi Br. at 26.)  At no time did Parisi submit a challenge below "equally" to both the contract as a whole "and to an arbitration or delegation provision."

Moreover, Parisi erroneously cites this Court's decision in *Spahr v. Secco*, 330 F.3d 1266, 1271-72 (10th Cir. 2003), as supporting her contention that the arbitrator should decide her challenge to the contract.  This is not a case that "challenges a contract on the basis that the party lacked mental capacity to enter into a contract." *Id*. at 1272.  The reasoning in *Spahr* was that unlike a fraudulent inducement claim,

_____

[4] Parisi's challenge in the district court – and which is not raised in this appeal -- was that the arbitration clause was "unconscionable" "because Parisi never agreed to allow her signature to be used to enter into a contract with Anderson that waived her class action rights…." (App. V3-616).  Parisi now reformed this argument on appeal to one of "fraud in the execution."

"which can be directed to individual provisions in a contract," "a mental capacity challenge can logically be directed only at the entire contract." *Id.* at 1273. Therefore, recognizing that it would be "odd" for a party to claim "its mental incapacity specifically affected the agreement to arbitrate" the Court held that his mental capacity defense naturally attached to both the contract and the agreement to arbitrate. *Id.* This is a narrow exception that does not apply here – Parisi's challenge to a meeting of the minds on the essential terms of the contract challenged the financing terms, not the arbitration agreement or delegation clause. Therefore, *Spahr* is inapplicable to this case, and does not overrule well settled law that was reinforced by the Supreme Court after the *Spahr* decision in *Buckeye*.

### 2.    Parisi Erroneously Asserts that *Cox Enterprises* Is No Longer Good Law.

Parisi's argument that this Court's decision in *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Lit.*, 835 F.3d 1195 (10th Cir. 2016), is no longer good law post-*Suski* (Parisi Br. at 27) is plainly incorrect. Contrary to Parisi's assertions, the Supreme Court's decision in *Suski* provides absolutely zero support for Parisi's contention that this Court's decision in *Cox* "cannot be squared with" *Suski*. (Parisi Br. at 27). Indeed, the unanimous *Suski* decision merely reaffirms RBA's (and GreenSky's) position here. The Court in *Suski* held:

> In cases where parties have agreed to **only one contract, and that contract contains an arbitration clause with a delegation provision, then, _absent a successful challenge to the delegation provision, courts_**

7

> ***must send all arbitrability disputes to arbitration***. But, where, as here,
> parties have agreed to two contracts—one sending arbitrability disputes
> to arbitration, and the other either explicitly or implicitly sending
> arbitrability disputes to the courts—a court must decide which contract
> governs.

144 S. Ct. at 1194 (e.s.).  There, the Court recognized if "that were the only contract at issue, we would not be deciding this case, sine the Arbitration Agreement quite clearly sends to arbitration disputes between Coinbase and its users, including disputes about arbitrability."  Here, as it pertains to RBA, Parisi is not challenging two different contracts entered into with RBA; it is only challenging the Windows Contract that contains one arbitration provision that delegates issues of arbitrability to the arbitrator.  *Id*. at 1191.[5]  In no way does *Suski* render Parisi's challenge to the contract as a whole as extending specifically to the arbitration agreement or delegation clause.  As such, this Court should hold that the parties dispute as to the formation of the Windows Contract should be decided by the arbitrator.[6]

### 3.    Parisi's Argument that "Fraud in the Execution" Allows her to Circumvent the Arbitration Clause Fails.

Parisi argues that delegation to the arbitrator is improper because RBA engaged in fraud in the execution of the Windows Contract, not fraud in the

---

[5] Likewise, as to GreenSky, Parisi only challenges a single contract – the Loan Agreement, which contains one arbitration provision that delegates issues of arbitrability to the arbitrator.

[6] As GreenSky references in cases cited *infra* in Part II.A.2, *Cox* and its progeny mandate arbitration for Parisi's challenge to the contract as a whole.

inducement.  First and foremost, that issue is raised by Parisi for the first time on appeal, and thus, is barred as a matter of law.  *See infra*, Part I.B.1.

However, even if Parisi could argue fraud in the execution, Parisi's attempt to allege a different variety of fraud to distinguish the *Prima Paint* holding slices fraud awfully thin.  Parisi's contention that fraud, which goes to the execution of the agreement, vitiates all assent, and therefore there is no contract, and consequently, no arbitration clause, is difficult to legitimately distinguish from fraud in the inducement.  Under Oklahoma law, if a party successfully proves fraud in the inducement, then there is no assent, and the contract is voidable to the same extent as that permitted if fraud in the execution is established.  *Posey*, 2000 OK 94, ¶ 11, 24 P.3d at 827.

More importantly, it's nearly impossible to carve out a "fraud in the execution" exception given a plain reading of *Prima Paint,* and the consistent reaffirmance and broadening of the severability doctrine by the Supreme Court. Indeed, in *Buckeye*, the Supreme Court rejected any such distinction between a contract that is void or voidable as a means to evade an arbitration clause:

> In declining to apply *Prima Paint's* rule of severability, the Florida Supreme Court relied on the distinction between void and voidable contracts. "Florida public policy and contract law," it concluded, permit "no severable, or salvageable, parts of a contract found illegal and void under Florida law." 894 So.2d, at 864.  *Prima Paint* makes this conclusion irrelevant. That case rejected application of state severability rules to the arbitration agreement without discussing whether the challenge at issue would have rendered the contract void

or voidable. *See* 388 U.S., at 400–404, 87 S.Ct. 1801. Indeed, the opinion expressly disclaimed any need to decide what state-law remedy was available, id., at 400, n. 3, 87 S.Ct. 1801 (though Justice Black's dissent asserted that state law rendered the contract void, id., at 407, 87 S.Ct. 1801). Likewise in *Southland*, which arose in state court, we did not ask whether the several challenges made there—fraud, misrepresentation, breach of contract, breach of fiduciary duty, and violation of the California Franchise Investment Law—would render the contract void or voidable. We simply rejected the proposition that the enforceability of the arbitration agreement turned on the state legislature's judgment concerning the forum for enforcement of the state-law cause of action. See 465 U.S., at 10, 104 S.Ct. 852. So also here, we cannot accept the Florida Supreme Court's conclusion that enforceability of the arbitration agreement should turn on "Florida public policy and contract law," 894 So.2d, at 864.

*Buckeye*, 546 U.S. at 446. Therefore, regardless whether this Court considers Parisi's newly raised argument alleging that the contract is void due to "fraud in the execution," the result is the same – the Court must send any such determination to the arbitration to decide.

This is especially true where, as here, Parisi ***signed*** the Windows Contract. Courts have ruled that "one party's *unreasonable* reliance on the other's misrepresentations, resulting in a failure to read a written agreement before signing it, is an insufficient basis, under the doctrine of fraud in the execution, for permitting that party to avoid an arbitration agreement contained in the contract." *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 423 (1996) (holding that negligent failure to read the document would preclude a finding that the contract was *void* due to fraud in the execution even where a party relied on misrepresentations there was a

misrepresentation as to the terms).  Consequently, the only parties that are generally able to make a fraud in the execution argument are those with impairments or disabilities.  *Id*. at 430.  Here, Parisi has made no such contention.

### B. THE DISTRICT COURT ERRED BY HOLDING THAT THE WINDOWS CONTRACT LACKED MUTUAL ASSENT.

Even to the extent the Court determines that the district court did not error in deciding the formation of the Windows Contract, the district court erroneously concluded that the Windows Contract lacked mutual assent.

### 1.  Parisi's Argument Alleging Fraud in the Execution is Barred.

#### a. Parisi Failed to Raise Fraud in the Execution Before the Trial Court

For the first time, Parisi raises in this appeal that RBA engaged in fraud in the execution.  It is well settled that any issue raised for the first time on appeal is generally barred. *See Sac & Fox Nation v. Hanson*, 47 F.3d 1061, 1063 (10th Cir. 1995) (failure to raise issue with trial court generally precludes review).[7]  Here, Parisi asks the Court to exercise its discretion to affirm on an alternative basis.  However, RBA has had no "fair chance to respond" to any allegations of fraud in the execution, and it would be

_____

[7] Indeed, Parisi recognizes and acknowledges that a party waives its right to raise a matter for the first time on appeal by expressly requesting this Court to hold that GreenSky waived any contractual right to enforce the delegation clause because it was not raised at the trial court below.  (Parisi Br. at 22, n. 6.)  While GreenSky does not agree that such delegation argument was not raised below, it stretches credibility for Parisi to ask the Court to consider an entirely new matter on appeal.

wholly inequitable for RBA to be limited to argue and defend this issue in a Reply Brief,

without an opportunity to respond at the trial level or in its Opening Brief.  Moreover,

this is not an issue of pure law, and RBA is entitled to submit evidence, if necessary, in

dispute of any such factual allegations that Parisi contends rose to the level of "fraud in

the execution."[8]    Thus, this newly raised issue does not implicate the Court's

discretionary exception to the general rule that matters not raised below are barred.

*Rademacher v. Colorado Ass'n of Soil Conservation Districts Med. Ben. Plan*, 11 F.3d

1567, 1571 (10th Cir. 1993) (declining to hear matters not raised below because it does

not implicate a discretionary exception to the general rule) (citations omitted).

### b. Parisi Failed to Raise Fraud in the Execution in Her Pleadings.

Moreover, not only did Parisi fail to raise any issue regarding fraud in the

execution before the district court in her response to RBA's Motion, she also never

*pled* that RBA engaged in fraud in the execution, nor did she seek to void the

Window Contract.[9]    The Amended Petition is vague as to what counts are being

---

[8] Fraud in the execution occurs if a "misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract. If the elements of fraud in the execution are met, the contract is not merely voidable, it is void *ab initio*. Restatement (Second) of Contracts § 163 (1981).

[9] Notably, one of the cases Parisi relied upon acknowledges that the amended complaint alleged fraud in the execution at the time that the Court considered the Plaintiff's arguments.  *Droney v. Vivint Solar*, 2018 WL 6191887, *4 (D.N.J. Nov. 28, 2018).  Here, Parisi has made no such allegations.

alleged against each Defendant.  However, the only potential claims raised against RBA are in paragraphs 92-93 of the Amended Petition, which assert that RBA violated Oklahoma Consumer Credit Code disclosure requirements and that RBA "falsely indicated the ***terms of the window sale <u>credit extension</u>*** were other than previously advertised."  (App. V1-120) (e.s.).  There are absolutely zero claims raised against RBA alleging that it committed fraud in the execution of the Window Contract, nor are there any allegations disputing the arbitration provision.  Parisi only alleges a false representation as to the actual ***financing*** terms.  Further, Parisi only requests an award of "damages" and does not request the Court to hold that the Windows Contract is "void."  (App. V1-121.)  These allegations certainly do not rise to the level of pleading fraud with particularity as required under Oklahoma law. Okla. Stat. Ann. tit. 12, § 2009; *A-Plus Janitorial & Carpet Cleaning v. Employers' Workers' Comp. Ass'n*, 1997 OK 37, ¶ 35, 936 P.2d 916, 930–31 (1997) (allegations of fraud must be stated with sufficient particularity to enable the opposing party to prepare his/her responsive pleadings and defenses).  Accordingly, Parisi is barred from raising fraud in the execution at this late date.

### 2. Parisi's Assertion that She Had No Reasonable Notice is Misplaced.

First, Parisi never argued in the district court below that the Windows Contract was not formed because she had "no reasonable notice"; thus, this argument is barred.  *See supra*, Part I.B.1.a.  Nevertheless, Parisi's argument fails.

In large part, the only Oklahoma cases Parisi cites involved online clickwrap agreements or arbitration clauses in warranty papers that are entirely distinguishable. For example, Parisi's reliance on *Walker v. BuildDirect.Com Techcs, Inc*., 349 P.3d 549 (Okla. 2015), is inapplicable as noted by another Oklahoma court:

> In *Walker*, the Oklahoma Supreme Court responded to the following certified question from the Tenth Circuit, whether "a written consumer contract for the sale of goods incorporate[s] by reference a separate document entitled 'Terms of Sale' available on the seller's website, when the contract states that it is 'subject to' the seller's 'Terms of Sale' but does not specifically reference the website[.]" *Walker*, 2015 OK 30, ¶ 1, 349 P.3d 549. The Supreme Court answered the certified question in the negative. However, the following statement by the *Mooneyham* Court is equally applicable to the present case: ***"[U]nlike the plaintiffs in Walker, [the buyer] plainly had notice of the arbitration agreement; after all, he signed it.*** Accordingly, *Walker* is inapplicable here." *Mooneyham*, 682 Fed.Appx. at 662.

*Najera v. David Stanley Chevrolet, Inc*., 2017 OK CIV APP 62, 406 P.3d 592, 597 n. 4 (2017) (e.s.).  Likewise, here Parisi signed the Windows Contract.  Further, the arbitration clause was not an extrinsic document; rather, it was incorporated as part of the Windows Contract which was emailed to Parisi.[10]  (App. V3-584.)

Parisi also cites to *Williams v. TAMKO Building Products, Inc*., 451 P.3d 146 (2019); however, in *Williams*, there was *no* evidence of *receipt* of *any* notice of the arbitration agreement for the warranty claims.  *Id*. at 151.  Here, in contrast and as

---

[10] Similarly, Parisi's reliance on *Hancock v. American Tel. and Tel. Co., Inc*., 701 F.3d 1248 (10th Cir. 2012), is misplaced as it involved a clickwrap type agreement.

noted in *Williams*, Parisi at least "should have had actual knowledge of the arbitration agreement" since she provided her email address and was told the Windows Contract would be emailed to her. *Id.*; (App. V3-554; V1-84, ¶ 23, V1-116, ¶ 66.)

In sum, Parisi cites to no direct Oklahoma law to support her argument that she had no reasonable notice when she voluntarily submitted her signature on the iPad executed in front of an RBA representative (Parisi Br. at 31-32), nor has she cited any statutory or case law that would consider any such contract void.

Parisi also erroneously relies on non-binding case law in other jurisdictions to create an argument that in this "electronic age" the "onus" is on a company doing business to provide reasonable notice. However, in Oklahoma, the duty is on the person signing to read the contract. As indicated, *infra*, Part I.B.4., Parisi did not meet her burden to show excusable neglect for her failure to read the Windows Contract before signing – and this is not a case where Parisi was "visually impaired."[11]

Thus, the non-binding case law relied upon by Parisi simply cannot be reconciled to well settled Oklahoma state law governing the formation of contracts.[12]

---

[11] *See* Parisi Br. at 34, citing *Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70 (1st Cir. 2018) (holding that there was no assent when customer was blind and arbitration agreement was not communicated to the consumer).

[12] *See Cornell v. Desert Fin. Credit Union*, 2021 WL 4710173, *5 (D. Ariz. Oct. 8, 2021) (disputing parties' reliance on cases in California because "California has a

Therefore, Parisi is not entitled to a determination that the Windows Contract is void because she had no reasonable notice of the terms.

### 3. The Parties Agreed on the Essential Terms of the Windows Contract.

Parisi strains credibility in asserting that the parties did not agree on the essential terms of the Windows Contract.  Mutual assent exists when a party expresses an intent to accept an offer, which can be by offer, word, signature, writing or communication delivered to the person making an offer.  *Monexco, LLC v. Corp. Comm'n*, 2023 OK CIV APP 34, ¶ 24, 538 P.3d 557, 563 (2022).  Parisi acknowledges that she was "interested in Andersen's advertised replacement windows for her home." (App. V1-116, ¶ 59.)  Parisi further acknowledges that RBA's sales representative informed Parisi she "could purchase the windows" (App. V1-116, ¶ 61); Parisi "discussed the windows she wanted to replace and made choices regarding those windows" (App. V1-116, ¶ 63); Parisi noted that RBA indicated that they would install on a split plan, installing "five windows now" (App. V1-116, ¶ 64); and Parisi "agreed to the purchase." (App. V1-116, ¶ 67.)  Thereafter, Parisi signed the iPad, and although she disputes signing two of the pages, she does not dispute signing the page with RBA's Arbitration Clause.  (App. V3-627-28, ¶¶

---

well-developed body of law concerning electronic consumer agreements," noting the parties failed to cite to Arizona law adopting similar theories of notice requirements in a consumer setting).

36-38.)[13]  Therefore, the executed Windows Contract and Parisi's actions establish mutual assent to the essential terms of the Windows Contract.

Further, Parisi's attempts to undermine the Windows Contract in an effort to avoid arbitration should be disregarded.  Of import, it cannot be overlooked that the crux of the dispute in this entire lawsuit -- as Parisi pled in the Amended Petition and argued in the district court in opposition to the motions to compel arbitration -- is and has always been a disagreement *over the interest rate* that Parisi believes she was promised.  Indeed, Parisi construes the Windows Contract as "unambiguously" requiring financing at "a two-year, zero interest" rate.  (Parisi Br. at 40.)  Thus, the nature of Parisi's dispute, even if true, does not undermine the *formation* of the Windows Contract, nor does it call into question the arbitration agreement.  *Lindon City v. Engineers Const. Co.*, 636 P.2d 1070, 1072 (Utah 1981) (a claim, followed by denial of the interest agreed upon, are disputes subject to arbitration). Therefore, any such dispute must be decided by the arbitrator.  *See supra*, Part A.1.

### 4.  Parisi Cannot Establish a Claim for Fraud in the Execution.

The party alleging fraud in the execution bears the burden of proof.  *Kilkenny as Trustees of Constr. Council Loc. 175 Pension Fund v. Gold Coast Pavers, Inc.*,

---

[13] Certainly, if the district court could not have concluded that Parisi mutually assented to the Windows Contract by signing the Windows Contract and/or by further considering Parisi's own admissions agreeing to the purchase of the windows, then, at a minimum, these facts would require a trial for adjudication.

2021 WL 4340827, *5 (E.D.N.Y. Sept. 22, 2021).  As

> [i]t might appear on first glance that the scenario Defendant describes
> amounts to fraud in the execution since Burton claims he believed he
> was merely signing an agreement to hire two men, rather than a prehire
> agreement.  However, in order to prevail on a fraud in the execution
> defense, Defendant also must demonstrate that Burton's ignorance of
> the contents of what he signed was excusable.  *Rozay's Transfer*, 791
> F.2d at 774.  "[F]raud in the execution arises only where a party 'neither
> knows *nor has reasonable opportunity to know* of the character or
> essential terms of the proposed contract.' "  *Iron Workers' Local No. 25
> Pension Fund v. Allied Fence & Sec. Sys., Inc*., 922 F.Supp. 1250, 1259
> (E.D.Mich.1996) (quoting Restatement (Second) of Contracts § 163
> (1981)).

*Local Union 1253, IBEW, AFL-CIO v. S/L Construction, Inc.*, 217 F. Supp. 2d 125,

135 (D. Maine 2002).  Fraud in the execution only applies where a signer was not

negligent in failing to read the document she signed.  *Shaeffer v. Kessler*, 2023 WL

1155587, *7 (S.D.N.Y. Mar. 20, 2013).  A plaintiff's negligent failure to read the

agreement will prevent her from establishing justifiable relance, an essential element

of fraud in the execution.  *Id*.  A party is not absolved of the basic responsibility to

review a document before signing it and must show excusable ignorance of the

contents of the writing.  *Del Turco v. Speedwell Design*, 623 F. Supp. 2d 319, 336

(E.D.N.Y. 2009).  Proving excusable ignorance requires a showing that the party

satisfied the responsibility of reading what she signed.  Here, Parisi has made no

showing of excusable ignorance.  She did not submit any evidence indicating that

she asked to review what she was signing and was denied that opportunity.  To the

contrary, she admittedly blindly signed the iPad without reading the contents of the

writing, not once, but twelve times.  (App. V3-625, ¶¶ 17-19.)  "Thus, [Plaintiff] has failed to prove the underlying agreement was never formed, and the Court must enforce the arbitration clause it contains."  *Local Union 1253*, 217 F. Supp. 2d at 135.

Parisi relies on non-binding cases in jurisdictions other than Oklahoma to support its fraud in the execution claim.  Further, Parisi's reliance on *Droney v. Vivint Solar*, 2018 WL 6191887, *4 (D.N.J. Nov. 28, 2018),[14] and *Sheppard v. Bourgeois*, 2001 WL 37125392 (D.N.M. Aug. 31, 2001),[15] do little to support Parisi's position that RBA engaged in fraud in the execution –the Courts simply found a genuine issue of fact as to whether a valid agreement existed.

### 5. Parisi Cannot Demonstrate that the Windows Contract is Void Due to a Violation of Federal and State Electronic Signature Laws.

The district court made no ruling as to whether there was compliance with the Federal or State signature laws, and while this issue was raised in Parisi's opposition

---

[14] Moreover, in *Droney*, the plaintiff *pled* in its Amended Complaint that she "did not see, *nor was she given opportunity to review* any information."  *Droney*, 2018 WL 6191887, *4.  Here, Parisi made no such allegations in her pleadings or declaration. Rather, Parisi asserts she was not informed of a *right* to review or provided an opportunity to review a *paper copy* of the document, but that is very different than establishing evidence of excusable neglect justifying her failure to make any attempt to read the terms of the contents before signing.  (App. V3-624, ¶ 12.)  Even to the extent that any such showing was or could be made, it would be a disputed factual issue that would need to be resolved by the fact finder.

[15] *Sheppard* was decided pre-*Buckeye*, and it does not appear that the parties raised the severability doctrine.

below, it is not alleged in Parisi's pleadings; Parisi has made no allegations attempting to nullify the agreement on this basis. Again, this argument disputes the formation of the Windows Contract itself, not the arbitration clause, and as such, it is for the arbitrator to decide. *See, supra*, Part I.A.

Regardless, Parisi provided no evidence in her declaration that she did not consent to her electronic signature, or to conduct the transaction electronically, nor is there any evidence demonstrating that she did not intend to sign. To the contrary, she acknowledges her signature in several places that she made on the iPad. (App. V3-625, ¶ 18.) She further acknowledges that she was told she would receive a copy of the contract, and indeed, the record demonstrates that a hard copy of the contract was sent to her. (App. V3-549, ¶¶ 2-3; 32, 552-584.)

First, neither the Electronic Signatures in Global and National Commerce Act ("E-Sign Act") or the Oklahoma Uniform Electronic Transactions Act ("OUETA") provide that a contract has not been formed for failure to comply with the statutes. Rather, to support her argument, Parisi cites to a non-binding 9th Circuit case to raise an issue of contract formation. However, *Ferguson v. Greensky, Inc*., 2023 WL 4462126 (2023), is entirely inapplicable as it discussed California's Credit Services Act, not the E-Sign Act or OUETA, requiring notice of a right to cancel. The case does not support Parisi's position that failure to comply with any Federal or State electronic laws prohibits contract formation. This is especially true here where, as

here, there is no dispute that Parisi agreed to sign on the iPad and received a copy of the contract document via email.

Moreover, Parisi's reliance on *Malone v. Hoogland Foods, LLC*, 2020 WL 6158201, *5 (W.D. Wis. Oct. 21, 2020), is misplaced.  There, the plaintiff produced evidence that created a reasonable doubt as to whether he signed the agreement. Here, there is no such dispute, nor any such evidence.  Indeed, Parisi did not contest her signature on the arbitration page, but only on two other pages.  (App. V3-627-28, ¶¶ 36-38.)  Accordingly, the Windows Contract cannot be disregarded as "not formed."

### 6. The Windows Contract and Arbitration Provision are Supported by Adequate Consideration.

Parisi challenges the Windows Contract for lack of consideration[16] arguing that "the contract allowed it to change the essential financing term without notice . . . ."  (Parisi Br. at 49).  Notably, acknowledging this argument would require the Court to recognize that zero percent interest financing was required under the Windows Contract, and that the contract terms allowed RBA to change or alter such

---

[16] The argument in the district court below was that the contract was "illusory" and "unenforceable" because the Zero Interest loan was never offered to her, not because RBA could unilaterally change the terms.  (App. V3-611-613).  As GreenSky reiterates *infra* in Part II.A.1.a, Parisi conflated these terms with "formation" in the district court, and continues to do so in this appeal.  The conclusive issue is the "validity" or "enforceability" of the Windows Contract, which undisputedly must be decided by the arbitrator.

provision.  Parisi cites to no such contract language.[17]  As stated in *Williams-Jackson*, a case cited by Parisi, there is "no evidence" that RBA reserved the right to unilaterally modify the Windows Contract "at any time, without notice." *Williams-Jackson v. Innovative Senior Care Home Health of Edmond, LLC*, 727 F. App'x 965, 969 (10th Cir. 2018).  Thus, Parisi's argument fails to dispute RBA's position in its Opening Brief that the Windows Contract is supported by adequate consideration.  (Opening Br. at 38-39)

## II.    THE DISTRICT COURT ERRED BY DENYING GREENSKY'S MOTION TO COMPEL ARBITRATION.

GreenSky's appeal turns on one threshold issue: Is Parisi's challenge to the GreenSky Arbitration Agreement one of contract formation or one of contract validity or enforceability? If it is the latter, as the facts and case law establish, the Parisi-GreenSky dispute must be sent to arbitration pursuant to the delegation provision in the GreenSky Arbitration Agreement. Yet, even if the district court properly framed the challenge as one of contract formation – which GreenSky believes is supported by neither the facts nor the law – then arbitration is still appropriate because Parisi assented to the terms of the GreenSky Arbitration

---

[17] Contrary to Parisi's assertions, RBA did not argue that it could unilaterally change the financing terms in the Windows Contract.  RBA argued that the GreenSky Financing Form provided *information* concerning the financing, and did not *guarantee* any financing terms, and that the financing was provided by a third party under a separate agreement.  (Opening Br. at 21).

Agreement. But the Court need not reach that issue because the district court plainly erred by ruling that Parisi's challenge was to the formation, not validity, of the Loan Agreement given both the court's and Parisi's frequent uses of such terms as "unauthorized" and "illusory," which attack the validity, not the existence, of the Loan Agreement containing the GreenSky Arbitration Agreement.

A. **PARISI'S OWN ARGUMENTS AND THE DISTRICT COURT'S OWN LANGUAGE DEMONSTRATE THAT PARISI CHALLENGES ENFORCEABILITY AND VALIDITY, NOT FORMATION, OF THE LOAN AGREEMENT, AND THOSE ISSUES HAVE BEEN DELEGATED TO THE ARBITRATOR.**

The analysis is straightforward. The Loan Agreement became effective only when the Shopping Pass was "used." It is undisputed that the Pass was, in fact, "used," and Parisi disputes the validity and authorization for that transaction. Given the GreenSky Arbitration Agreement's delegation clause, that issue falls squarely within the arbitrator's jurisdiction. Therefore, the district court erred in terming this a "formation" issue.[18]

---

[18] Parisi seemingly contests GreenSky's ability to enforce the arbitration agreement as an alleged "non-signatory." (Parisi Br. at 51-52.) while GreenSky may be a "non-signatory" to the Loan Agreement, it unquestionably is a party to the Arbitration Agreement, which is the relevant point. Indeed, GreenSky made this argument below, noting that it is an "agent" of BMO Harris for purposes of servicing and generally managing consumer loan transactions made under the GreenSky Program. (App. V1-82, ¶ 10.) For Parisi to argue that GreenSky "has pointed to no case in which a non-signatory was converted to a party for purposes of one clause within a larger contract" (Parisi Br. at 51) borders on the absurd, because every federal court that has assessed a motion to compel by GreenSky – under the same loan agreement Parisi had – has operated under exactly that premise. Such an argument demonstrates Parisi's misunderstanding both of her own facts and the legal issue in play here.

1. **Parisi's Challenge Necessarily Is One of Validity/Enforceability and Not Formation Because, as Is Undisputed, Her Loan Agreement Was Formed with the Use of the Shopping Pass or Loan.**

   a. ***The District Court's Order Clearly Addressed Whether the Use of the Shopping Pass or Loan Was Authorized, Not Whether the Loan Agreement Had Been Formed in the First Instance.***

As GreenSky emphasized in the Opening Brief, the district court conflated the concepts of "formation" and "enforceability" in denying GreenSky's motion to compel arbitration. Parisi makes the same errors in her Response. Indeed, as she concedes on the first page of her response to GreenSky's motion, Parisi made it clear that she disputes whether her Loan Agreement is *enforceable*: "Parisi disputes that there is a *valid and enforceable arbitration agreement* with Defendant GreenSky." (App. V1-104 (e.s.).)[19] And she reinforces those arguments in her brief in this Court, asserting that "Parisi repeatedly emphasized to GreenSky that *she did not authorize the transaction*." (Parisi Br. at 60 (e.s); *see also id.* at 20 ("Parisi vigorously denied authorizing such a transaction.").)

Rather than assess Parisi's post-hoc arguments in briefs filed three years after the transaction, the best evidence to support the proposition that Parisi argues post-

---

[19] Parisi has little to say to refute the district court's analytical error that it fundamentally misunderstood the structure of the GreenSky Program by assuming, erroneously, that GreenSky is a party to the Loan Agreement, when GreenSky is only a party to the GreenSky Arbitration Agreement. And, as every court to address the issue has held, GreenSky, as a party to the GreenSky Arbitration Agreement, can enforce that agreement because it falls within the definition of "us." *See, e.g.*, *Wright v. Greensky, Inc.*, 2021 WL 2414170, *12 (S.D. Fla. June 14, 2021); *Belyea v. GreenSky, Inc.*, 2021 WL 1338552, *3 (N.D. Cal. Apr. 9, 2021).

formation authorization, and not formation itself, is her own real-time emails to GreenSky that Parisi referenced in her brief in the district court:

- 12/2/21: "I am NOT authorizing any payment at this time to Renewal by Anderson" (App. V3-638 (capitalization original));

- 12/10/21: "I do NOT authorize any transaction which I have already stated." (App. V3-639 (capitalization original).)

These in-the-moment emails demonstrate that Parisi complains of an unauthorized charge to the Shopping Pass, not that there was no contract to begin with.

Moreover, the district court acknowledged that the transaction occurred, holding "GreenSky's evidence tends to show the transaction *occurred* on that day [of November 29, 2021], but it does not indicate whether the transaction *was authorized* by Parisi." (App. V2-515 (emphasis original).) And, summarizing its (erroneous) ruling, the court concluded that "GreenSky does not carry its burden to present sufficient evidence the November 29 transaction was *authorized* by Parisi." (App. V2-519 (e.s.).) And in a separate order, the district court held, "As a matter of law, the Zero Interest Loan is an *illusory*, *unenforceable* contract, and as such, no agreement to arbitrate exists." (App. V3-613 (e.s.).)[20]

---

[20] GreenSky is not "reframing" Parisi's arguments "as contesting the 'validity' or 'enforceability' of the agreements" as she argues (Parisi Br. at 23); these are the words she and the district court used. There is no need to "reframe" them.

25

Thus, as the district court's own language establishes, the critical issue is not formation, but validity (i.e., whether the use of the Shopping Pass or loan was "authorized" by Parisi). That makes perfect sense because the trigger for acceptance of the Loan Agreement was "[u]se of this Shopping Pass," which "constitute[d] acceptance" by Parisi "of the terms of the accompanying Loan Agreement," including, of course, the GreenSky Arbitration Agreement (App. V1-89); the issue is whether Parisi authorized the transaction after she was deemed to have accepted the terms of the Loan Agreement when the Shopping Pass or loan was used on November 29. And that is not a "formation" issue. As GreenSky emphasized in the Opening Brief, alleged unauthorized transactions fall squarely within the scope of arbitration provisions such as the GreenSky Arbitration Agreement. *See, e.g.*, *Pfeifle v. Chemoil Corp.*, 373 F. App'x 720, 721 (5th Cir. 2003) ("engaging in unauthorized transactions"); *Jones v. NetSpend Card Co.*, 2018 WL 2427376, *1 (W.D. Tex. May 30, 2018) (defendant's alleged "failure to address unauthorized electronic transactions on [plaintiff's] prepaid debit card account"); *Krutchik v. Chase Bank USA, N.A.*, 531 F. Supp. 2d 1359, 1361 (S.D. Fla. 2008) (plaintiff's "dispute of several charges made to his credit card account by an unauthorized third party"); *Athon v. Direct Merchants Bank*, 2007 WL 1100477, *5 (M.D. Ga. Apr. 11, 2007) ("Plaintiff claims neither he nor his wife ever opened the credit card account in the

26

first place, that an imposter opened the account"). These are classic "validity" and "enforceability" arguments.

**b.  *Courts Routinely Hold That Use of a Product, Such as a Credit Card, Constitutes Acceptance and, Thus, Formation of a Contract.***

Parisi conceded below that "use of a GreenSky Shopping Pass . . . operated like a credit card" (App. V3-602), and the district court agreed. (App. V2-506 ("Shopping Pass . . . functions like a credit card").) In the analogous setting of credit cards, courts uniformly hold that use of the card constitutes acceptance of the credit card contract and all terms associated with that contract – including mandatory arbitration. *See Audish v. Am. Express Co.*, 2023 WL 2366888, *4 (S.D.N.Y. Mar. 6, 2023) ("acceptance and use of a credit card demonstrates acceptance of the conditions in a Cardholder Agreement"); *Shafer v. Citibank, N.A.*, 2022 WL 22842397, *2 (N.D. Tex. May 17, 2022) ("use of a credit card [i]s acceptance of a card agreement"); *El-Hage v. Comerica Bank*, 2020 WL 7389041, *7 (E.D. Mich. Dec. 16, 2020) ("courts accept that the issuance and use of a credit card creates a legally binding agreement ... [b]y simply using the card") (quotations omitted); *Ranginwala v. Citibank*, 2020 WL 6817508, *4 (D.N.J. Nov. 19, 2020) ("[U]se [of] the account is sufficient to establish Plaintiff's assent to the Agreement, including the arbitration provision."); *Umana v. Citigroup, Inc.*, 2018 WL 11473760, *3 (S.D. Fla. Nov. 5, 2018) ("Plaintiff's use of the credit cards constitutes her acceptance of the Card Agreements' terms and creates a binding contract."); *Kulig v. Midland*

*Funding, LLC*, 2013 WL 6017444, *6 (S.D.N.Y. Nov. 13, 2013) ("the use of a credit card constitutes acceptance of an offer of credit"); *Heiges v. JP Morgan Chase Bank, N.A.*, 521 F. Supp. 2d 641, 647 (N.D. Ohio 2007) ("the issuance and use of a credit card creates a legally binding agreement") (quotations omitted).

Quite simply, it was not disputed that the Parisi's Shopping Pass was "used." Under the overwhelming case law, that use constituted acceptance and, therefore, formation of the Loan Agreement. Disputes beyond that, such as whether that "use" was authorized, go squarely to the validity and enforceability of the transaction, which have been delegated to the arbitrator here.

## 2. The Delegation Clause Mandates That All Other Questions Must Be Resolved by to the Arbitrator.

The district court erred in failing to consider the GreenSky Arbitration Agreement's delegation provision.[21] (App. V1-025.)[22] The agreement delegated to the arbitrator the responsibility for resolving "any claim, dispute or controversy of

---

[21] As this Court recently held in reversing a district court's misapplication of a delegation provision, such clauses might be termed an "Arbitrator Decides Clause." *Brayman v. KeyPoint Gov't Solutions, Inc.*, 83 F.4th 823, 829 (10th Cir. 2023).

[22] Parisi suggests that GreenSky waived the delegation clause issue by not arguing it in the district court. To the contrary, in its motion to compel arbitration, GreenSky cited the delegation provision and made it clear that all "'Claims' between Plaintiff and GreenSky 'will be resolved through binding arbitration,' quoting the broad definition of "Claim" that included the delegation of issues "including the validity, enforceability or scope of the Arbitration Agreement" (App. V1-25), then quoted the same provision a second time in addressing "whether the arbitration agreement is broad or narrow." (App. V1-36.) GreenSky raised, and Parisi had every chance to address, the delegation language in the court below.

every kind and nature" between the parties, including "the validity, enforceability or scope of this Arbitration Provision or the Agreement." (*Id.*)[23]

Parisi does not dispute the fact did not specifically challenge the delegation provision in the district court.[24] Instead, she posits that her alleged challenge to the arbitration provision, or the Loan Agreement as a whole, necessarily encompassed the delegation provision. But just as "an arbitration clause within a contract is 'severable' from the remainder of the contract," *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1105 (10th Cir. 2020) (citing *Rent-A-Center v. Jackson*, 561 U.S. 63, 70-71 (2010); *Buckeye*, 546 U.S. at 447), "delegation clauses are severable and are thus considered separate from the rest of the arbitration contract." *Id.* Therefore, "[i]f a party challenges the validity of an arbitration contract as a whole but fails to specifically challenge a delegation clause therein, then the delegation clause will

---

[23] Parisi does not dispute that the GreenSky Arbitration Agreement contains "clear and unmistakable evidence" to delegate gateway questions of enforceability and arbitrability to the arbitrator based on the agreement's express incorporation of JAMS and AAA rules. *See Goldgroup Resources, Inc. v. DynaResource de Mexico, S.A. de C.V.*, 994 F.3d 1181, 1191 (10th Cir. 2021).

[24] Parisi places outsized importance on the Supreme Court's recent decision in *Suski*. In fact, *Suski* addressed a question not implicated here: "What happens if parties have multiple agreements that conflict as to the . . . question of who decides arbitrability?" 144 S.Ct. at 1193. If anything, *Suski* reaffirmed "[t]he severability principle," which "establishes that a party seeking to avoid arbitration *must directly challenge the arbitration or delegation clause*, not just the contract as a whole." *Id.* at 1194 (e.s.).

typically require a court to compel arbitration and allow an arbitrator to determine whether the arbitration contract was indeed valid." *Id.*

To the extent Parisi challenges the delegation provision, it is only in the context of her broader argument that her Loan Agreement is unenforceable. That is insufficient to constitute a separate challenge to the delegation provision:

> Only if an enforceability argument applies only specifically to the arbitration provision (such as a claim that the provision is unconscionable or that a party was defrauded into agreeing to the arbitration provision) is enforceability to be decided by the court.

*Cox*, 835 F.3d at 1209. Here, Parisi simply claims that she did not authorize the charge that was made to her Shopping Pass. This Court's ruling in *Cox* aligns with the Supreme Court's principle that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye*, 546 U.S. at 449 (quoted in *Cox*, 835 F.3d at 1210). District courts in this Circuit – except for the district court here – have followed *Cox* and compelled arbitration when addressing arguments similar to the "illusory" language the district court used here. *See BigBen 1613, LLC v. Belcaro Group, Inc.*, 2018 WL 4257321, *5 (D. Colo. Sept. 6, 2018) (where plaintiff's challenged "language applies to the parties' agreement as a whole and not merely to the arbitration agreement, plaintiff's 'illusory' argument 'must be resolved by the arbitrator'") (quoting *Cox*, 835 F.3d at 1211); *Fancher v. Westwind, Ltd.*, 2018 WL 11411336, *2 (W.D. Okla. Aug. 8, 2018) ("whether the Agreement is illusory is for the arbitrator, not the Court, to decide")

(citing *Cox* and compelling arbitration); *SOTI, Inc. v. Impartner, Inc.,* 2018 WL 2745246, *4 (D. Utah June 7, 2018) (plaintiff's "argument that a contract lacks an essential term is similar in nature to the argument in *Cox* that the contract lacked consideration. . . . [I]t appears clear from *Cox* that binding case law mandates arbitration for [plaintiff]'s argument about a missing essential term."); *see also D-J Eng'g Inc. v. UBS Fin. Serv., Inc.*, 2012 WL 171342, *4 (D. Kan. Jan. 20, 2012) (pre-*Cox* case holding that "the issue of whether or not the contracts are illusory is to be resolved in arbitration—not this court").[25]

In short, the Shopping Pass undeniably was "used," which formed the Loan Agreement. Her disputes over authorization of that use, and the district court's ruling that the Loan Agreement supposedly was "illusory," simply cannot stand in light of *Cox* and its progeny. The Court should reverse the district court for this reason.[26]

---

[25] As RBA notes, Parisi's reliance on *Spahr*, which dealt with a mental incapacity issue, is inapplicable here. (Parisi Br. at 26-27.) Moreover, *Spahr* is on shaky ground after *Buckeye*, in which, as this Court observed in *Cox*, the Supreme Court "distinguished, without endorsing," the *Spahr* decision. 835 F.3d at 1210-11.

[26] Unable to distinguish *Cox*, which mandates reversal, Parisi declares that Cox is "no longer good law" in light of *Suski*. (Parisi Br. at 27.) That is non-sensical. Nothing in *Suski* purported to overturn existing law such as *Buckeye*, on which Cox relied. As noted above, the Supreme Court reaffirmed its governing law while addressing an unusual issue (competing arbitration agreements) that has nothing to do with this case.

31

**B. EVEN IF THE COURT CONCLUDES THAT PARISI CHALLENGES FORMATION, SHE ASSENTED TO THE ARBITRATION AGREEMENT BECAUSE SHE RECEIVED REASONABLE NOTICE OF THE LOAN AGREEMENT PRIOR TO USE OF THE SHOPPING PASS.**

Even if the Court were to agree with the district court that Parisi's challenges go to formation, not enforceability, the facts before the district court established that Parisi received the Loan Agreement – or, at least, reasonable notice of the Loan Agreement – before the Shopping Pass was used. The district court misstated, then misapplied, the law on this subject. It is undisputed that GreenSky sent the Loan Agreement, which included the GreenSky Arbitration Agreement, to Parisi on November 23, 2021 – six days before the Shopping Pass was used – in at least two ways: by email and by U.S. Mail. (App. V1-28-30.) Indeed, the district court agreed that, on November 23, "GreenSky both mail[ed] and email[ed] a copy" of the Loan Agreement. (App. V2-512.)[27] Parisi does not deny receiving those transmissions. Instead, she argues that she only saw them after the Shopping Pass was used. The undisputed facts and the applicable caselaw, however, refute those arguments.[28]

---

[27] The district court erroneously held that "Parisi is unaware of the email." (App. V2-512.) "Awareness," however, is not the issue, and this legal error, on *de novo* review, should be sufficient to reverse the district court because "reasonable notice," not "awareness," is the issue. Indeed, "[a] party who is bound by a contract is bound by all its terms, whether or not the party was aware of them." *Norcia v. Samsung Telecomms Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017).

[28] The district court's statement that Parisi "was not provided access to a copy of the loan document" (App. V3-598) – one of its many erroneous statements based on its fundamental misapprehension of the GreenSky Program, which even Parisi seems to concede – is simply, and completely, incorrect. At a bare minimum, this is the sort of issue that would warrant a formation trial to resolve such disputed facts.

**1. Parisi Received the Loan Agreement by E-Mail, and Her "Spam" Excuse Holds No Weight.**

Again, Parisi does not dispute receiving the email containing the Loan Agreement with the GreenSky Arbitration Agreement on November 23, six days before the Shopping Pass was used; she merely says that "the emails [GreenSky] sent went to her spam folder." (Parisi Br. at 20.) Parisi essentially concedes the voluminous caselaw GreenSky cited in the Opening Brief that recipients cannot argue a "lack of notice" merely by asserting that an email went to the recipient's spam folder. (*See* Opening Br. at 59-60 (citing numerous cases).)

Instead, Parisi erroneously claims these emails did not inform her of the arbitration provision. (Parisi Br. at 56.) Yet, the emails clearly informed Parisi of the Loan Agreement; she concedes that the email declared, in large green letters: "It's Time to Activate Your Loan!" with a page-width green bar containing the words "Activate Your Loan" by clicking on the bar. (Parisi Br. at 56; (App. V3-641).) And that's apparently what happened – five minutes later, she received another email, stating, again in large green type: "Congratulations on Activating Your Loan!" (App. V3-641.) That is sufficient notice. *See Stock v. Wells Fargo*, 2023 WL 5505839, *6 (C.D. Cal. July 13, 2023) ("Once Plaintiffs . . . access[ed] their mobile banking accounts, they became bound to every provision therein—including the arbitration provision—whether or not they read them."). Parisi received reasonable notice of the Loan Agreement and its arbitration provision by e-mail.

**2. Parisi Has Not Rebutted the Presumption That She Received the Documents by U.S. Mail That Were Mailed to Her Nearly a Week Before Use of the Shopping Pass.**

      **a. *The Mailbox Rule Applies and Parisi's Non-Specific Testimony Does Not Rebut Presumption of Receipt*.**

As GreenSky pointed out in the Opening Brief, "proof of mailing of a properly addressed communication bearing proper postage creates a rebuttable presumption the communication was received." *Gibson v. C.I.R.*, 264 F. App'x 760, 763 (10th Cir. 2008) (quoting *Sorrentino v. IRS*, 383 F.3d 1187, 1188 (10th Cir. 2004)). Parisi seemingly concedes GreenSky's testimony establishing the mailing, which the court in *Wright*, interpreting the same loan agreement and transmission facts, held was sufficient to "create a presumption that Plaintiff received the Loan Agreement that was mailed to her." *Wright*, 2021 WL 241417, *14. Parisi, instead, incorrectly claims that she rebutted the presumption of receipt. (Parisi Br. at 56 (citing App. V3-628, ¶ 43).) First, Parisi merely stated that "[w]ithin a few days" of some unidentified date, "GreenSky mailed me a contract." (App. V3-628, ¶ 43.) That is not sufficient to rebut the presumption of receipt. There is no specificity to Parisi's testimony – certainly none that is sufficient to rebut the presumption.

Second, even if Parisi's non-specific testimony were deemed sufficient, the law requires more than a simple denial. Indeed, a mere denial "unsubstantiated by any corroborating evidence" is insufficient to rebut the presumption. *Wright*, 2021 WL 2414170, *15 (rejecting plaintiff's argument and compelling arbitration); *see*

*also Myers v. Credit One Bank*, 2017 WL 3727339, \*2 (E.D. Pa. Aug. 30, 2017) (plaintiff's "lack of evidence substantiating that she did not receive" agreement insufficient; motion to compel arbitration granted). Without any evidence to corroborate her non-specific testimony, such as postmarks, or other witness testimony, Parisi's "mailbox rule" argument fails.

### b. *Parisi Is Presumed to Have Received the Loan Agreement Prior to the Use of the Shopping Pass*.

Parisi's primary argument concerning the mailbox rule is that she should not be presumed to have received the Loan Agreement with the arbitration agreement within the number of days prior to the use of the Shopping Pass. Neither her flawed calendar math nor the law supports that argument.

The Supreme Court applied a three-day presumption in *Baldwin Co. Welcome Center v. Brown*, 466 U.S. 147 (1984), which involved an EEOC right-to-sue letter. There, the Supreme Court recited that "[a] notice of right to sue was issued to [plaintiff] on January 27, 1981," then held that "[t]he presumed date of receipt of the notice was January 30, 1981" – three calendar days later. *Id.* at 148, 148 n.1 (citing Fed. Rule Civ. P. 6(e)). In light of *Brown*, as one district court in this Circuit has observed, "[b]oth the Tenth Circuit and district courts within this circuit have applied this three-day presumption in various contexts." *Marquez v. Fantastic Foods, Inc.*, 2006 WL 8444224, \*3 (D.N.M. May 25, 2006) (citing, *inter alia*, *Jarrett v. U.S. Sprint Comm. Co.*, 22 F.3d 256, 259 (10th Cir. 1994)); *see also Hales v. Casey's*

*Marketing Co.*, 886 F.3d 730, 736 (8th Cir. 2018) (where letter was sent "on September 24, 2014, it is therefore presumed that [plaintiff] received the letter on September 27, 2014"); *Norasteh v. U.S. Dept. of Educ.*, 2011 WL 2493968, *2 (S.D.N.Y. June 22, 2011) ("The Federal Rules of Civil Procedure establish a presumption that items sent by mail are received within three days.") (citing *Brown*).

As the Ninth Circuit has observed, and consistent with *Brown*, "[t]he three-day presumption accords with Federal Rule of Civil Procedure 6(e), which provides that '[w]henever a party must or may act within a prescribed period after service and service is made" by mail, "3 days are added after the prescribed period would otherwise expire.'" *Payan v. Aramark Mgt. Serv. L.P.*, 495 F.3d 1119, 1125 (9th Cir. 2007) (quoting Fed. R. Civ. P. 6(e)). The three-day presumption, which Parisi has not rebutted, means she received the November 23 mailing well before the November 29 transaction.[29] The district court's failure to apply this legal principle was further error.

---

[29] Parisi argues that "because November 23 was the Tuesday before Thanksgiving, November 29—when the Shopping Pass transaction occurred—was only the third day from when the Loan Agreement was sent." (Parisi Br. at 54.) That is absurd. The only federal (and, therefore, postal) holiday over the Thanksgiving weekend is Thanksgiving Day itself. *See, e.g.*, Fed. R. Civ. P. 6(a)(6). Thus, Wednesday, Friday, and Saturday were delivery days during the November 2021 timeframe when Parisi was sent the Loan Agreement. She is presumed to have received the Loan Agreement on Saturday, November 27, the third day after mailing.

Clearly, Parisi received access to the Loan Agreement before November 29, both by email and by U.S. Mail. Then, as is undisputed, the Shopping Pass was used on November 29. Under the voluminous caselaw, Parisi received, or was on notice of the Loan Agreement, and the GreenSky Arbitration Agreement within it, before the Shopping Pass was used. For this alternative reason, the district court should be reversed.

III.  **At a Minimum, Fact Questions Exist, Warranting a Formation Trial.**

The parties have noted throughout this Reply Brief of various factual issues in the footnotes, which demonstrates that at a minimum, this Court should reverse for determination of the factual issues. *Droney*, 2018 WL 6191887, *4.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should reverse the district court's orders denying Appellants' Motions to Compel Arbitration and enforce the arbitration agreements between the parties.

Dated:  September 11, 2024

Respectfully submitted,

/s/ Diane J. Zelmer, Esq.
Diane J. Zelmer, Esq.
BERENSON LLP
4495 Military Trail, Suite 203
Jupiter, Florida 33458
(561) 429-4496

*Attorneys for Appellant Oklahoma Windows and Doors, LLC*

/s/ Barry Goheen, Esq.
Barry Goheen, Esq.
PIERSON FERDINAND
100 Mount Param Ridge
Atlanta, GA 30327
404-703-3093
Email: barry.goheen@pierferd.com

Derrick T. DeWitt
Kyle R. Prince
DeWITT PARUOLO & MEEK
P.O. Box 138800
Oklahoma City, Oklahoma 73113
(405) 705-3600

*Attorneys for Appellant GreenSky, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and the Court's Order dated August 21, 2024 enlarging the Appellants' opening brief to 8,500 words because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B), this brief contains 8,014 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)/10th Cir. R. 32(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  September 11, 2024

Respectfully submitted,

<u>/s/ Diane J. Zelmer</u>
Diane J. Zelmer, Esq.
BERENSON LLP
4495 Military Trail, Suite 203
Jupiter, Florida 33458
(561) 429-4496
Email:  djz@berensonllp.com

<u>/s/ Barry Goheen</u>
Barry Goheen, Esq.
PIERSON FERDINAND
100 Mount Param Ridge
Atlanta, GA 30327
404-703-3093
Email: barry.goheen@pierferd.com

Sheila D. Sayne, Esq.
Sayne Law PLLC
P.O. Box 33309
Tulsa, Oklahoma 74153-3309
(918) 740-3013
Email:
sheila.sayne@outlook.com
*Attorneys for Appellant Oklahoma*
*Windows and Doors, LLC*

Derrick T. DeWitt
Kyle R. Prince
DeWITT PARUOLO & MEEK
P.O. Box 138800
Oklahoma City, Oklahoma 73113
(405) 705-3600
Email:  dewitt@46legal.com
Email:  kprince@46legal.com
*Attorneys for Appellant GreenSky, LLC*

39

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 11, 2024, I served a copy of the foregoing Consolidated Reply Brief of Appellants via the Court's CM/ECF system on all counsel of record.

Dated:  September 11, 2024

Respectfully submitted,

<u>/s/ Diane J. Zelmer</u>
Diane J. Zelmer, Esq.
BERENSON LLP
4495 Military Trail, Suite 203
Jupiter, Florida 33458
(561) 429-4496
Email:  djz@berensonllp.com

<u>/s/ Barry Goheen</u>
Barry Goheen, Esq.
PIERSON FERDINAND
100 Mount Param Ridge
Atlanta, GA 30327
404-703-3093
Email: barry.goheen@pierferd.com

Sheila D. Sayne, Esq.
Sayne Law PLLC
P.O. Box 33309
Tulsa, Oklahoma 74153-3309
(918) 740-3013
Email:
sheila.sayne@outlook.com
*Attorneys for Appellant Oklahoma Windows and Doors, LLC*

Derrick T. DeWitt
Kyle R. Prince
DeWITT PARUOLO & MEEK
P.O. Box 138800
Oklahoma City, Oklahoma 73113
(405) 705-3600
Email:  dewitt@46legal.com
Email:  kprince@46legal.com
*Attorneys for Appellant GreenSky, LLC*